**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THE HARVARD DRUG GROUP, LLC,

                Plaintiff,              CASE NO. 11-10066

v.                                    HON. MARIANNE O. BATTANI

TWIN CITY FIRE INSURANCE CO.,

                Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS
AND GRANTING PLAINTIFF SUMMARY JUDGMENT**

Before the Court is Defendant Twin City Fire Insurance Co.'s ("Twin City") Motion to Dismiss (Doc. No. 7). Plaintiff, Harvard Drug Group LLC ("Harvard Drug") responded to the motion and requested that the Court award it summary judgment (Doc. No. 10). The Court heard oral argument on May 12, 2011, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, Defendant's motion is **DENIED** and the Court awards summary judgment to Plaintiff.

**I. FACTS**

Twin City issued Private Choice Encore! Insurance Policy No. KB KB 0239225-08 ("Policy"), to Plaintiff Harvard Drug for the period of February 1, 2008, through November 1, 2008. In 2008, Plaintiff's employee, Nancy Carlson, who worked as Vice President of Sales, filed suit against Harvard Drug, alleging that she had been subject to harassment and discrimination at work. Harvard Drug gave written notice of the 2008 claim to Twin City. Twin City and Plaintiff subsequently entered into a Settlement Agreement and Mutual Release ("Release") dated June 5, 2009.

In July 2010, Plaintiff terminated Carlson and forty-one other employees as part of a reduction in force. (Compl., Ex. E.) The following month, Carlson's attorney sent a letter to Harvard Drug alleging that her termination was in retaliation for her earlier lawsuit. On September 8, 2010, Harvard Drug gave notice of Carlson's claim to Twin City. (Compl. at ¶ 25.) In October 2010, Plaintiff paid Carlson $100,000 to settle the 2010 Claim, and sought indemnification for the settlement from Twin City.

According to Plaintiff, the 2010 Claim was covered under the Policy as part of the single claim as defined in the Policy. Twin City agreed, but asserted that the 2010 Carlson Claim was interrelated to the 2008 Claim, and, therefore, was released on June 5, 2009, with the 2008 claim. (See Compl., Ex. E.) Therefore, Twin City denied the claim.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombley, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement

to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombley, 550 U.S. at 555; Ashcroft v. Iqbal, 129 S.Ct. 1937,1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Federal Rule of Civil Procedure 56(a) authorizes a court to grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). However, the nonmoving party "cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009).

### III. ANALYSIS

The parties advance two issues for the Court to decide: does the Policy cover the retaliation claim, and if so, was the claim released. Before those matters are addressed the Court must decide what standard to apply to Defendant's motion.

Rule 12(d) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). When a motion is converted, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). Here, Defendant has presented the

Release, which has been considered by the Court. Therefore, the issues are analyzed under the summary judgment standard.

Further, although Plaintiff did not file a motion for summary judgment, it asks the Court to award it summary judgment under Rule 56(f). The rule authorizes a court to grant summary judgment to the nonmoving party, but only after providing the movant with notice and a reasonable time to respond. FED. R. CIV. P. 56(f). When a court reviews cross-motions for summary judgment, it applies the same standard, evaluating each motion on its own merits. Beck v. City of Cleveland, 390 F.3d 912, 917 (6th Cir. 2004). With these standards in mind, the Court directs its attention to the first issue.

### A. Is the 2010 Claim Covered by the Policy?

A district court, sitting in diversity, must apply the law of the forum state. Therefore, Michigan law applies. Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Atl. Richfield Co. v. Monarch Leasing Co., 84 F.3d 204, 205 (6th Cir. 1996).

Under Michigan law, insurance policies are contractual agreements and subject to the same rules of contract interpretation that apply to contracts in general. Rory v. Continental Ins. Co., 703 N.W.2d 23, 26 (Mich. 2005). A court must construe and apply unambiguous insurance policy provisions as written. Auto-Owners Ins. Co. v. Churchman, 489 N.W.2d 431, 433-34 (Mich. 1992). An insurance policy is read as a whole, and ordinary and plain meaning should be attributed to all terms. Royal Prop. Group, LLC v. Prime Ins. Syndicate, Inc., 706 N.W.2d 426, 432 (Mich. Ct. App. 2005).

With these guiding principles in mind, the Court turns its attention to the Policy itself. Under the Declarations, coverage applies only to a claim first made against the Insureds

during the Policy Period. . . . (Doc. No. 7, Ex. 1, Declarations.) Here, the retaliation claim arose in 2010, long after the Policy expired; however, other provisions in the Policy impact the issue of coverage.

Notably, the Policy includes Employment Practices Liability Coverage, which provides that Twin City "shall pay Loss on behalf of the Insured resulting from an Employment Practice Claim first made against the Insured during the Policy Period. . .for an Employment Practices Wrongful Act by the Insured." (Doc. No. 7, Ex. 1, § I.A.)

The Policy defines Employment Practice Wrongful Act as a wrongful act involving the following:

> (1) wrongful dismissal, discharge or termination of Employment. . ., wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent Employment evaluation, or wrongful deprivation of career opportunity;
>
> (2) sexual or other workplace harassment, including quid pro quo and hostile work environment;
>
>         \*   \*   \*   \*
>
> (5) Retaliation.

(Doc. No. 7, Ex. 1, Employment Practices Liability Coverage Part § II(D). Without question the 2010 retaliation falls within the definition of Wrongful Act.

In addition the Policy defines Interrelated Wrongful Acts as "Wrongful Acts that have "as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes." (Doc. No. 7, Ex. 1,§ II,(L).) Under the definition, the retaliation alleged by Carlson in 2010, which shares a common nexus with the 2009 harassment, is an Interrelated Wrongful Act.

Finally, Section X of the Policy, which sets forth a section governing Interrelationship of Claims, is relevant to the issue of coverage. It reads in part:

> All Claims based upon, arising from or in any way related to the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim first made on the earliest date that:
>
> > (A) any of such Claims was first made, regardless of whether such date is before or during the Policy Period;

(Doc. No. 7, Ex. 1, Sect. X.)  Because the two incidents are Interrelated Wrongful Acts, they are deemed to be a "single Claim" under the Policy, first made in 2008.

Twin City concedes that under the Policy the retaliation claim is part and parcel of a single Claim, with a claims made date of April 9, 2008.  Nevertheless, Twin City concludes that the 2010 retaliation claim was released in the 2009 settlement. Accordingly, the Court directs its attention to the language in the release.

**B.  Does the Release Waive the 2010 Claim?**

The interpretation of a release is a matter for the court to decide.  If it is unambiguous, the court must interpret it.  Cole v. Ladbroke Racing Michigan, Inc. 164 N.W. 2d 169, 176 (Mich. Ct. App. 2000).  Meaning must be given to every word, clause, and phrase, and ambiguity cannot be created by reading portions of the release out of context.  Green v. Consumers Power Co., No. 199992, 1998 WL 2016545, *5 (Mich. Ct. App. Mar. 20, 1998).

It is undisputed that the parties entered into a Release of the 2008 claim. (Doc. No. 7, Ex. 2.)  The Release includes language pertinent to the resolution of the dispute. First and foremost, the parties agreed that "Harvard [Drug] and Twin City are desirous of achieving a resolution of such claims and questions existing between them regarding

6

Harvard [Drug's] request for coverage under the Policy in connection with the [2008] Lawsuit. . . ."  Therefore, they agreed to release

> Twin City and any of its present, former or future parent companies. . .from **any and all claims**, suits, debt liens, contracts, agreements promises, liabilities, claims, demands, damages, **including (1) all rights and claims which the Insured has under the policy, . . .whether known or unknown, suspected or unsuspected, fixed or contingent, which the insured now has or may have, through and including the date hereof**, that arise out of, are upon, or in any way involve, or relate to: (k) the Lawsuit; and (ii) the matters alleged or which could have been alleged in the lawsuit by Carlson (hereinafter, the "Released Matters"). . . .

(Doc. No. 7, Ex. 2, ¶ 2 A.) (Emphasis added).

Twin City's position it that this language in the Release specifically included all claims related to the 2008 Carlson claim, including the 2010 claim, and that the Release therefore bars Plaintiff's claim.  Under the Policy, the new matter is a single Claim with a claims made date of April 9, 2008.  Under the Release, Harvard Drug expressly waived all of its rights regarding the Carlson Claim, including damages, expenses, and loses known and unknown.  This claims made policy limits the relevant inquiry: the question is not when the conduct occurred, but when the claim including related or Interrelated Wrongful Acts was first reported.  The report occurred in April 2008.  The retaliation, which gives rise to the 2010 Carlson Claim, is an Interrelated Wrongful Act.  Therefore, the claim was contemplated by the parties when they executed the Release, and Plaintiff waived coverage.

In the alternative, Twin City reasons that it is of no import if the Wrongful Act is deemed not to have occurred until after the Release, because in that case, it would have occurred outside the policy period. Simply put, Twin City reasons that unless the 2010

7

claim is deemed an Interrelated Wrongful Act, first reported in 2008, no coverage exists. If it was covered under the Policy, it was released.

According to Defendant, on the date the parties executed the Release, any and all other claims that could have been made under the "claims made and reported" Policy had expired. This is inaccurate given the Policy Provision governing the Interrelationship of Claims. It creates a means to exclude claims first reported during the Policy Period that were related to an earlier Wrongful Act that occurred before the Policy Period. It also provided a means by which conduct that occurred outside the Policy Period could be brought in.

The Court cannot credit either position advanced by Defendant. The Court does agree with Twin City's first contention, that the 2010 claim is piggybacked and accorded single Claim status under the Policy. Nevertheless, the Court declines to read the Release in conjunction with the Policy because the Policy terms are not incorporated into the Release. Nor did the Release incorporate the definition of "single Claim" in the Policy. Here, the Release is the entire agreement between the Insured and Twin City relative to the 2008 Carlson settlement. The language of the Release, if unambiguous, is dispositive. Second, Twin City's reading renders the phrase, "including the date hereof," superfluous. If the parties intended to release any and all claims that arose in the future, there would be no need to limit the Release to claims "which the Insured now has or may have, through and including the date hereof." Nor would the limiting date be necessary given that the parties entered into the release seven months after the expiration of the Policy Period if all claims expired when the Policy Period ended. Third, the language in the Release contains no reference to claims not yet in existence. Had the parties intended

to release future claims, they would have included language releasing claims that may arise hereinafter. Finally, the Recitals in the Release address only the 2008 Lawsuit, and the parties' desire to resolve that lawsuit.

This interpretation is consistent with Paragraph 2B. of the Release, wherein Harvard Drug acknowledges that

> (a) it may have sustained damages, expenses and losses in connection with the subject matter of the claims released hereunder which are **presently unknown or not suspected** and that such damages, expenses and losses, if any, may give rise to additional damages, expenses and losses in the future which are not now anticipated by them, and (b) that this Agreement and the foregoing release have been negotiated and agreed upon despite this realization and, being fully advised, expressly waive any and all rights it may have with respect the to Released matters. . . .

(Doc. No. 7, Ex. 2, ¶ 2 B.) (Emphasis added). Again this language does not encompass claims that have not yet arisen. It serves to release damages, expenses, and losses arising out of the 2008 claims, which were unknown or even related damages that had not come to fruition.

Next, the Release requires Harvard Drug to waive any rights under any statute, including California Civil Code § 1542, which "would limit the effect of the foregoing release to those claims actually known or suspected to exist at the time of the effectiveness of the foregoing release." Simply put, Harvard Drug is precluded from raising any claim it did "not know or suspect to exist in [its] favor at the time of executing the release[ ]." (Id.) Again, this provision does not release claims not yet in existence.

A dispute between the parties as to the meaning of a release does not render it ambiguous. Adell v. Sommers, Schwartz, Silver & Schwartz, P.C., 428 N.W.2d 26 (Mich. Ct. App. 1988) (citations omitted). The assessment turns on whether the "language is

9

reasonably susceptible to more than one interpretation. If the terms of the release are unambiguous, contradictory inferences become "subjective, and irrelevant", and the legal effect of the language is a question of law to be resolved summarily." Gortney v. Norfolk & Western R. Co., 549 N.W.2d 612, 614-15 (Mich. Ct. App. 1996) (citations omitted).

The Court finds that the language in the Release is not reasonably susceptible to more than one interpretation. It does not cover a claim that was not yet existing at the time of the release. In this case, the parties agreed to release any and all claims known or unknown, but there is no release of nonexisting claims. Harvard Drug advances case law supporting its position that had the parties intended to release claims not yet in existence, such language would have been used in the release. Its position is supported by Michigan law holding that a release is limited to a claim that could have been in existence at the time of execution. Rosenbaum v. Davis Iron Works, Inc., 669 F. Supp. 813, 818 (E. D. Mich. 1987), aff'd in part 871 F.2d 1088 (6th Cir. 1989).

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion and **GRANTS** summary judgment to Plaintiff. Plaintiff may submit a supplemental brief addressing the availability of statutory interest, attorney fees and costs, and provide supporting documentation on or before August 17, 2011. Defendant may file a response on or before August 26, 2011.

**IT IS SO ORDERED.**

                                            s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            UNITED STATES DISTRICT JUDGE

Date: August 5, 2011

### CERTIFICATE OF SERVICE

Copies of this Opinion and Order were mailed and/or electronically filed to counsel of record on this date.

                                            s/Bernadette M. Thebolt
                                            Case Manager